# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
March 6, 2007 Session

## STATE OF TENNESSEE v. KENNETH EARL WHITTEN

**Direct Appeal from the Circuit Court for Hardeman County**
**No. 05-01-0144    J. Weber McCraw, Judge**

---

**No. W2006-01201-CCA-R3-CD  - Filed May 8, 2007**

---

The defendant, Kenneth Earl Whitten, was convicted of aggravated sexual battery, a Class B felony, and sentenced as a violent offender to ten years in the Department of Correction. He appeals three issues: (1) the sufficiency of the evidence; (2) whether child abuse should have been charged as a lesser-included offense; and (3) whether the trial court erroneously applied enhancement or mitigating factors in sentencing the defendant. Following our review, we affirm the judgment of the trial court but modify the defendant's sentence to eight years.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed as Modified**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID G. HAYES and JERRY L. SMITH, JJ., joined.

Gary F. Antrican, District Public Defender; and David S. Stockton, Assistant Public Defender, for the appellant, Kenneth Earl Whitten.

Robert E. Cooper, Jr., Attorney General and Reporter; Brian Clay Johnson, Assistant Attorney General; D. Michael Dunavant, District Attorney General; and Joe VanDyke, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

The defendant was indicted for allegedly having sexual contact with his six-year-old neighbor, C.W.[1]

---

[1]This court's policy is to refer to minor victims of sexual abuse by their initials.

At trial, Brandy West, the victim's mother, testified that she had known the seventy-one-year-old defendant for several years, that he was a friend of her father's, and that she "trusted him with [her] kids." Prior to the incident, the defendant had lived with West and her children "for a while" before moving into the trailer next door. Asked about the defendant's drinking, West said, "He always drank. He woke up drinking and went to sleep drinking." On June 2, 2005, the defendant came to West's house and asked to take her children to his house to see his kittens. After "[a]bout ten minutes," West went to the defendant's trailer to check on the children and found the door "cracked open." She described observing C.W. and the defendant:

> Everybody was inside. I opened the door. I didn't knock. And when I opened the door I seen [sic] him having my little girl touch him. I told [C.W.] . . . to get out of the trailer. He jerked up his pants and I told him not to step one foot in my yard near me or my kids again and I was going to call the law and he was going to jail.

West said that the defendant's blue jeans and underwear "were around his knees and he was holding up his shirt . . . to show his private," and C.W. "was touching his penis." She did not see any additional clothes that the defendant could have been changing into. West said that C.W. was six years old at the time and that her son, who was then four years old, was also in the room.

Prior to this event, C.W. had never mentioned "any sexual topics" to West, nor had West ever had any problems with C.W. "sexually acting out." However, since the incident, C.W. had "sexually acted out at a friend's house and at school," and West had "to take her to counseling for it."

Sergeant Billy Davis of the Hardeman County Sheriff's Department testified that on the day after the incident, he assisted in taking the defendant's statement. Sergeant Davis related the substance of the defendant's statement in a question and answer format:

> Question, "On 06/02/05 [were C.W.] and [her brother] at your residence at 35 Gull Street?" Answer, "Yeah." Question, "Did [C.W.] grab your penis while at your residence on 06/02/05?" Answer, "I wouldn't say she grabbed it. She just touched it." Question, "What were you doing when [C.W.] touched your penis?" Answer, "I was going to change clothes." Question, "What [were C.W.] and [her brother] doing at your residence on 06/02/05?" Answer, "They came over there to play with the cats." Question, "How many times did [C.W.] touch your penis?" Answer, "Once, just for a second." . . .
>
> . . . "Were you intoxicated at the time [C.W.] touched your penis?" Answer, "I would say yes." Question, "Did [C.W.'s] mother, Brandy West, walk in when [C.W.] was touching your penis?" Answer, "She didn't even come in the house."

Investigator Mike Kennamore, also of the Hardeman County Sheriff's Department, testified that the defendant initially said that "nothing had happened" at his home.

The defendant testified that he invited C.W. and her brother to his home that night but did not know they were still there when he began changing clothes:

> [The children] wanted to come over and look at the kitty cats but I thought they had gone home when I started to change clothes. I thought they went home. The door was wide open and I proceeded – that's the reason I had my pants pulled, to change clothes. And I can't add to that or take from it.

The defendant acknowledged that he had consumed "a few beers" that night. Asked if he had encouraged C.W. to touch his penis, he said, "No, sir, I sure didn't." As to whether he had any intention of having sexual contact with her, the defendant said, "Lord have mercy, no. Never." Asked why he did not pull up his pants when he saw C.W., the defendant said, "I just turned around like that right there and she was right there touching it. Now, that's the way it was. Yes, sir, that's the way it was."

## ANALYSIS

### I. Sufficiency of the Evidence

On appeal, the defendant argues that his conviction was not supported by sufficient evidence.

In consideration of this issue, we apply the rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); see also Tenn. R. App. P. 13(e); State v. Evans, 838 S.W.2d 185, 190–92 (Tenn. 1992). This rule applies when the determination of guilt is based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Pendergrass, 13 S.W.3d 389, 392–93 (Tenn. Crim. App. 1999) (citing State v. Dykes, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990)).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 405 S.W.2d 768, 771 (Tenn. 1966) (citing Carroll v. State, 370 S.W.2d 523 (Tenn. 1963)). Additionally, a jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

To argue the insufficiency of the evidence in the present case, the defendant asserts that the proof in this case is circumstantial and there was "no direct evidence that [he] induced, coerced, persuaded or even anticipated being inappropriately touched by the [victim]." Further, he contends that "[o]nly by sheer speculation and conjecture, could any reasonable juror determine whether or not the [defendant] had somehow persuaded the alleged victim to touch his penis." We will review this argument.

Aggravated sexual battery is defined as:

[U]nlawful *sexual contact* with a victim by the defendant *or the defendant by a victim* accompanied by any of the following circumstances:

(1) Force or coercion is used to accomplish the act and the defendant is armed with a weapon or any article used or fashioned in a manner to lead the victim reasonably to believe it to be a weapon;

(2) The defendant causes bodily injury to the victim;

(3) The defendant is aided or abetted by one (1) or more other persons; and

(A) Force or coercion is used to accomplish the act; or

(B) The defendant knows or has reason to know that the victim is mentally defective, mentally incapacitated or physically helpless; or

(4) *The victim is less than thirteen (13) years of age*.

Tenn. Code Ann. § 39-13-504(a) (2006) (emphasis added).

As used in the foregoing statute, "sexual contact" includes the intentional touching of the defendant's intimate parts, if that intentional touching can be *reasonably construed* as being for the purpose of sexual arousal or gratification. Tenn. Code Ann. § 39-13-501(6) (2006) (emphasis added); see also Tenn. Code Ann. § 39-13-501(2) (2006) ( including "the primary genital area . . . of a human being" within the statutory definition of "intimate parts").

It is undisputed both that the victim in this case was six years old at the time of the incident and that she touched the defendant's penis. Thus, the relevant inquiry is whether the evidence

sufficiently supports the jury's finding that the touching could be reasonably construed as being for the purpose of sexual arousal or gratification.

Saying that she saw the defendant "having [the victim] touch him," West contradicted the defendant's assertion that the touching spontaneously occurred while he was changing clothes. By its verdict, the jury accredited West's testimony, and the record supports this determination. Moreover, viewed in the light most favorable to the prosecution, the circumstances of the touching, including the fact that the defendant was alone with the children and was "holding up his shirt" while C.W. touched his penis, coupled with West's reactions to what she saw, support a reasonable inference that the defendant wanted C.W. to touch his penis and that the touching was for the purpose of sexual arousal or gratification. See State v. Hayes, 899 S.W.2d 175, 180 (Tenn. Crim. App. 1995) (concluding that the circumstances under which the defendant rubbed the victim's breast, including the way he kissed her, "the timing of the events when the mother was not present, the location of the events, the state of dress of the defendant and the victim, and how the physical contact occurred," were "sufficient for a rational trier of fact to find beyond a reasonable doubt that the touching was intentional and for the purpose of sexual arousal or gratification"). This issue is without merit.

## II. Whether the Trial Court Erred by Not Instructing the Jury on Lesser-Included Offense of Child Abuse

The defendant also argues that the trial court erred by refusing to instruct the jury on the lesser-included offense of child abuse pursuant to Tennessee Code Annotated section 39-15-401(e). However, as the State contends, the defendant has waived appellate review of this issue by failing to request in writing that child abuse be charged as a lesser-included offense. Tenn. Code Ann. § 40-18-110(b)-(c) (2006); State v. Page, 184 S.W.3d 223, 229 (Tenn. 2006). Tennessee Code Annotated section 40-18-110 (c) states that a defendant cannot present the failure to instruct the jury on a lesser-included offense as a ground for relief on appeal unless the instruction was requested in writing at trial:

> Notwithstanding any other provision of law to the contrary, when the defendant fails to request the instruction of a lesser included offense as required by this section, the lesser included offense instruction is waived. Absent a written request, the failure of a trial judge to instruct the jury on any lesser included offense may not be presented as a ground for relief either in a motion for a new trial or on appeal.

Tenn. Code Ann. § 40-18-110(c) (2006). However, our supreme court has determined that when a defendant fails to comply with Tennessee Code Annotated section 40-18-110, an appellate court still can review, under the plain error doctrine, the omission of instruction on lesser-included offenses. Page, 184 S.W.3d at 226.

For this court to find plain error, each of the following five factors must be established: (a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is necessary to do substantial justice. State v. Smith, 24 S.W.3d 274, 282–83 (Tenn. 2000) (adopting the five-factor test first articulated by this court in State v. Adkisson, 899 S.W.2d 626, 641–42 (Tenn. Crim. App. 1994)).

In some cases, child abuse may be a lesser-included offense of aggravated sexual battery if the evidence supports the charge. Tenn. Code Ann. § 39-15-401(e) (2006); see also State v. Elkins, 83 S.W.3d 706, 710–12 (Tenn. 2002). We will determine whether the proof in this matter would have supported such a charge.

Child abuse is defined as follows:

> (a) Any person who knowingly, other than by accidental means, treats a child under eighteen (18) years of age in such a manner as to inflict injury commits a Class A misdemeanor; provided, however, that, if the abused child is six (6) years of age or less, the penalty is a Class D felony.

> (b) Any person who knowingly abuses or neglects a child under eighteen (18) years of age, so as to adversely affect the child's health and welfare, commits a Class A misdemeanor; provided, that, if the abused or neglected child is six (6) years of age or less, the penalty is a Class E felony.

Tenn. Code Ann. § 39-15-401(a)-(b) (2006).

The defendant argues that an instruction for child abuse was warranted because "there was proof in this cause of further injury and no proof that the [defendant] made the [victim] do anything," this argument dependent upon West's testimony that the victim had "sexually act[ed] out" and received counseling. In the defendant's view, this evidence equates to "adversely affect[ing] the child's health and welfare," although he cites no legal authorities for this claim. We disagree. The evidence regarding the victim's emotional injury was not sufficient for a reasonable juror to conclude that the defendant committed child abuse under Tennessee Code Annotated section 39-15-401(a)-(b). See State v. Matthew Kirk McWhorter, No. M2003-01132-CCA-R3-CD, 2004 WL 1936389 at *38-39 (Tenn. Crim. App. Aug. 30, 2004) (holding that the evidence in that case, which included the child victim's testimony that the defendant performed fellatio on him and vice versa, was not sufficient to support an instruction on child abuse).

### III. Whether the Trial Court Erroneously Applied Enhancement or Mitigating Factors in Sentencing the Defendant

Lastly, the defendant argues that the trial court erred by misapplication of enhancement factors and failing to apply various mitigating factors.

When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record "with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2006). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000).

In this matter, the record does not affirmatively show that the trial court considered all relevant facts and circumstances. Accordingly, we conclude that the presumption of correctness is not afforded the determinations of the trial court. Therefore, our review is simply *de novo*. See State v. Pierce, 138 S.W.3d 820, 826-27 (Tenn. 2004) (citing State v. Poole, 945 S.W.2d 93, 93 (Tenn. 1997)).

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210 (2006); State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001) (citing Ashby, 823 S.W.2d at 168; State v. Moss, 727 S.W.2d 229 (Tenn. 1986)). The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401 (2006), Sentencing Commission Cmts.; Ashby, 823 S.W.2d at 169.

At the sentencing hearing, the trial court applied enhancement factor (4), that "the victim of the offense was particularly vulnerable because of her age." See Tenn. Code Ann. § 40-35-114(4) (2006). The defendant argues that the trial court should not have applied this factor because the relevant statutory elements of aggravated sexual battery require that the victim be under the age of thirteen. Our supreme court has stated that application of this factor is not precluded even though an essential element of the offense is that the victim be a certain age. See, e.g., State v. Walton, 958 S.W.2d 724, 729 (Tenn. 1997) (citing State v. Adams, 864 S.W.2d 31, 35 (Tenn. 1993)). However, the State must put on some proof of particular vulnerability in addition to the victim's age. Poole, 945 S.W.2d at 96-97; see also State v. Otis Miller, III, No. M2004-00707-CCA-R3-CD, 2005 WL 1220236, at *4 (Tenn. Crim. App. May 20, 2005), perm. to appeal denied (Tenn. Dec. 5, 2005) (holding that the defendant's sentence for aggravated sexual battery against his five-year-old

daughter was improperly enhanced by the vulnerability factor because it was applied based "solely on the victim's age," and there was no evidence of "particular vulnerability"). The State concedes that no additional proof was put forth showing that the victim was particularly vulnerable because of her young age and that the trial court's application of this factor was therefore erroneous. We agree and conclude that this factor was not applicable.

The trial court also enhanced the defendant's sentence because the offense "involved a victim and it was committed to gratify the defendant's desire for pleasure or excitement." See Tenn. Code Ann. § 40-35-114(7) (2006). As the State points out on appeal, our supreme court has held that this factor cannot be applied to enhance a sentence for aggravated sexual battery because:

> sexual battery requires that the touching be for the purpose of sexual arousal or gratification. Thus, the offense necessarily includes the intent to gratify a desire for pleasure or excitement. State v. Hayes, 899 S.W.2d 175, 185 (Tenn. Crim. App.), perm. to appeal denied, (Tenn. 1995). Since the factor is an essential element of the offense, it cannot be used to enhance the sentences of sexual battery and aggravated sexual battery. Tenn. Code Ann. § 40-35-114 (1995 Supp.).

State v. Kissinger, 922 S.W.2d 482, 489–90 (Tenn. 1996) (footnote omitted). As such, the trial court's application of this factor was also erroneous. Thus, there were no enhancement factors applicable to the defendant.

At the sentencing hearing, the trial court concluded, without comment, that "[t]here were no findings of mitigating circumstances." The defendant argues that the trial court erred by failing to recognize as mitigating factors that he: (1) had no prior criminal history; (2) was seventy-one years old; (3) had an I.Q. of seventy; and (4) "[h]ad been, pursuant to law, evaluated post trial by experts and found to have a low risk of re-offending." We conclude that the trial court could have considered the elements listed by the defendant as potential mitigating factors. See Tenn. Code Ann. § 40-35-210(b)(5) (2006) (stating that a trial court shall consider before determining a defendant's specific sentence, "[e]vidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114"); see also Tenn. Code Ann. § 40-35-113(6) (2006) (listing as a potential mitigating factor that "[t]he defendant, because of youth *or old age*, lacked substantial judgment in committing the offense") (emphasis added); Tenn. Code Ann. § 40-35-113(8) (2006) (listing as a potential mitigating factor that "[t]he defendant was suffering from a mental or physical condition that significantly reduced the defendant's culpability for the offense"); Tenn. Code Ann. § 40-35-113(13) (2006) (providing that "[a]ny other factor consistent with" the sentencing statutes may be considered as potentially mitigating a defendant's sentence).

The defendant was sentenced as a violent offender for a Class B felony and could have received "not less than eight (8) nor more than twelve (12) years." Tenn. Code Ann. § 40-35-112(a)(2) (2006). The advisory sentencing guidelines suggest that in the absence of enhancement factors, "[t]he minimum sentence within the range of punishment is the sentence that should be imposed." Tenn. Code Ann. § 40-35-210(c) (2006). In light of the trial court's misapplication of

two enhancement factors, leaving no applicable enhancement factors, the defendant should have been sentenced to eight years, the minimum for the offense.[2]

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court but modify the defendant's sentence from ten years to eight years.

_____
ALAN E. GLENN, JUDGE

---

[2]Effective June 7, 2005, Tennessee Code Annotated sections 40-35-114 and 40-35-210 were rewritten in their entirety. While this defendant could have elected to be sentenced pursuant to these new provisions, the record on appeal does not contain a waiver showing that he did so. Thus, the revised statutes are not applicable. See Tenn. Code Ann. §§ 40-35-114, -210, Compiler's Notes. In view of the fact that we are reducing the defendant's sentence to the minimum, it is unnecessary to utilize the analysis set out in State v. Gomez, 163 S.W.3d 632 (Tenn. 2005), vacated by Gomez v. Tennessee, __ U.S. __, 127 S. Ct. 1209 (2007).