# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
Assigned on Briefs October 4, 2011

## STATE OF TENNESSEE v. TEHREN CARTHEL WILSON

**Direct Appeal from the Circuit Court for Madison County**
**No. 09-728      Roger A. Page, Judge**

**No. W2010-02613-CCA-R3-CD  - Filed May 11, 2012**

The defendant, Tehren Carthel Wilson, was convicted by a Madison County Circuit Court jury of identity theft, a Class D felony, and theft of property, a Class A misdemeanor, and was sentenced to an effective term of twelve years, eleven months and twenty-nine days. On appeal, he challenges the sufficiency of the convicting evidence and the trial court's denial of his request to charge fraudulent use of a credit card as a lesser-included offense of identity theft.  After review, we affirm the judgments of the trial court.  However, we remand for entry of a corrected judgment in Count 3, identifying the defendant's identity theft conviction as a Class D felony instead of a Class C felony.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed and Remanded for Entry of Corrected Judgment**

ALAN E. GLENN, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and JAMES CURWOOD WITT, JR., J., joined.

George Morton Googe, District Public Defender; James O. Martin, III, Nashville, Tennessee (on appeal); and Paul Edward Meyers, Assistant Public Defender (at trial), for the appellant, Tehren Carthel Wilson.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; James G. (Jerry) Woodall, District Attorney General; and Benjamin C. Mayo, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

On September 8, 2008, Alison Tritt's purse was stolen from her car while she was at

the gym. After officers investigated charges made with Tritt's credit card, the defendant was indicted on charges of burglary of a vehicle, theft of property valued less than $500, and identity theft.

At trial, Alison Tritt, "the victim," testified that she went to Gold's Gym in Jackson, Tennessee, on September 8, 2008, for her regular workout. She arrived around 5:45 p.m. and left her purse under one of the seats in her car. When she returned to her car around 7:30 or 7:45 p.m., she noticed that the rear passenger side window was broken and her purse was missing. The purse contained her wallet, checkbook, social security cards for her and her son, and her credit cards. Among the missing credit cards was a Mastercard issued from Bank of America that ended in the numbers 8916.

The victim testified that she later learned that a charge of forty-eight dollars had been made at a Pilot gas station on her Mastercard at 6:45 p.m. the evening her purse was stolen. The victim said that she was the only person authorized to use that Mastercard, that she did not make the transaction at the gas station, and that she did not authorize anyone else to use the card on her behalf.

On cross-examination, the victim stated that she did not believe anyone saw who broke into her car. The victim agreed that, because she is a white female and the defendant is a black male, it would be difficult for the defendant to pretend to be her in an in-person transaction. However, the victim expressed that, from her experience in the retail industry, "people don't ever even think twice about slipping a card through a machine." The victim said that, to her knowledge, no one used her social security card or made any applications in her name.

With regard to her checkbook, the victim noted that several of her checks had been used, including one at Best Buy, one at Lowe's, one at Schnuck's, and three at Walmart. When shown copies of the checks that had been written to Best Buy and Lowe's, the victim noted that the checks had been signed and her driver's license number and expiration date were written at the top of each check. The victim surmised that it looked as though whoever signed the checks was also the one who wrote the driver's license number and expiration date, and that perhaps he or she had done so before tendering the checks.

On redirect examination, the victim testified that she had used her credit card in the past without being asked for identification. She agreed that, when she used the credit card, she was purporting to be the person whose name was on the card or someone authorized to use the card. She reiterated that she did not authorize the use of her credit card for the purchase at the Pilot gas station and that whoever used the card was purporting to be her. On recross-examination, the victim acknowledged that using someone else's credit card did

not necessarily mean that one was purporting to be the cardholder but could mean one was purporting to be an authorized user of the card.

Investigator Byron Maxidon with the Jackson Police Department testified that he responded to the call at Gold's Gym on September 8, 2008, and took a report from the victim.

Edward A. Bayliss, III, testified that he was the store manager for the Pilot gas station on Sand Pebble Road in Jackson, Tennessee, on September 8, 2008. Bayliss recalled that he was contacted by police officers regarding a credit card purchase of gasoline made on that date, and he produced copies of the store's surveillance video for the time the victim's credit card incurred a charge there. The video showed the defendant arriving at the gas station in a white SUV and pulling into pump ten at 6:38 p.m. The video showed the defendant get out of the car, go to the pump, and go back to the car several times before finally starting to pump gas at 6:40 p.m. The defendant went inside the store for a couple of minutes and then returned to the pump and completed the transaction a few seconds before 6:45 p.m. On cross-examination, Bayliss noted that the video showed that there was someone in the passenger's seat of the defendant's vehicle at the gas pump.

On redirect examination, Bayliss testified that a receipt of the defendant's transaction on pump ten from September 8, 2008, at 6:45 p.m. showed that he charged $48.05 to a Mastercard ending in the numbers 8916. In response to questioning, Bayliss agreed that he considered a credit card to be a piece of identifying information and that the number listed on a credit card was distinct to that particular person.

On recross-examination, Bayliss testified that it appeared from the video footage that the defendant made a purchase inside the store and paid cash for the items. Bayliss noted that it was rather standard for gas stations to have surveillance cameras and that the defendant did not cover his face or wear a hat.

Sergeant Jeff Shepherd of the Jackson Police Department testified that there was no known suspect at the outset of the case, but, after they obtained the surveillance video, the defendant "was developed" as a suspect through use of his driver's license photo.

After the conclusion of the proof, the jury convicted the defendant of theft of property valued less than $500 and identity theft but acquitted him on the burglary of a vehicle charge.

## ANALYSIS

## I. Sufficiency of the Evidence

The defendant challenges the sufficiency of the convicting evidence, arguing that the State failed to exclude all reasonable hypotheses except that of his guilt. In considering this issue, we apply the rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). The same standard applies whether the finding of guilt is predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Winters, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003).

A criminal offense may be established entirely by circumstantial evidence. State v. Majors, 318 S.W.3d 850, 857 (Tenn. 2010). It is for the jury to determine the weight to be given the circumstantial evidence and the extent to which the circumstances are consistent with the guilt of the defendant and inconsistent with his innocence. State v. James, 315 S.W.3d 440, 456 (Tenn. 2010). In addition, the State does not have the duty to exclude every other reasonable hypothesis except that of the defendant's guilt in order to obtain a conviction based solely on circumstantial evidence. See State v. Dorantes, 331 S.W.3d 370, 380-81 (Tenn. 2011) (adopting the federal standard of review for cases in which the evidence is entirely circumstantial).

All questions involving the credibility of witnesses, the weight and value to be given the direct and circumstantial evidence, and all factual issues are resolved by the trier of fact. See id.; State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)).

"A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Viewed in the light most favorable to the State, the evidence was sufficient for a rational trier of fact to find that the defendant committed the offense of identity theft. Tennessee Code Annotated section 39-14-150(b)(1) provides:

> A person commits the offense of identity theft who knowingly obtains, possesses, buys, or uses, the personal identifying information of another:
>
> > (A) With the intent to commit any unlawful act including, but not limited to, obtaining or attempting to obtain credit, goods, services or medical information in the name of such other person; and
> >
> > (B)(i) Without the consent of such other person; or
> >
> > (ii) Without the lawful authority to obtain, possess, buy or use that identifying information.

Tenn. Code Ann. § 39-14-150(b)(1)(A), (B).

> "[P]ersonal identifying information" means any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including:
>
> > (1) Name, social security number, date of birth, official state or government issued driver license or identification number, alien registration number, passport number, employer or taxpayer identification number;
> >
> > (2) Unique biometric data, such as fingerprint, voice print, retina or iris image, or other unique physical representation;

(3) Unique electronic identification number, address, routing code or other personal identifying data which enables an individual to obtain merchandise or service or to otherwise financially encumber the legitimate possessor of the identifying data; or

(4) Telecommunication identifying information or access device.

Id. § 39-14-150(e).

The evidence at trial showed that the defendant purchased $48.05 worth of gasoline using a credit card belonging to the victim. The victim testified that she had not authorized anyone else to use her credit card and that her name and card number were printed on the card. Thus, the evidence demonstrated that the defendant knowingly used another's personal identifying information without that person's consent or authority to obtain goods.

Likewise, the evidence shows that the defendant committed the offense of theft of property. Tennessee Code Annotated section 39-14-103 provides, "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." The evidence demonstrates that the victim left a purse containing, among other things, her credit card in her car around 5:45 p.m. on September 8, 2008. Less than an hour later, the defendant arrived at a gas station and used that same credit card to purchase gas. The victim testified that the defendant was not authorized to use her credit card. Granting the State all legitimate inferences that may be drawn from the evidence, the evidence was sufficient to support the defendant's conviction for theft of property.

The defendant asserts that the State failed to exclude all reasonable hypotheses except that of his guilt. However, as noted above, the Tennessee Supreme Court recently adopted the federal standard for circumstantial evidence that treats it the same as direct evidence and removes the requirement of excluding every reasonable hypothesis except that of the defendant's guilt. See Dorantes, 331 S.W.3d at 380-81; see also State v. Sisk, 343 S.W.3d 60, 66 (Tenn. 2011). The defendant is not entitled to relief.

## II. Jury Instruction

The defendant also argues that the trial court should have instructed the jury on fraudulent use of a credit card as a lesser-included offense of identity theft.

At the beginning of trial, prior to the selection of the jury, the trial court discussed preliminary matters with the attorneys, including proposed jury instructions. The court noted that there was a question as to whether fraudulent use of credit card was a lesser-included offense of identity theft. The State argued that it was not a lesser-included offense, and the defendant took the opposite position and asked the court to give the charge. The court ultimately decided that it would not charge fraudulent use of a credit card as a lesser-included offense of identity theft. The defendant raised the issue in his motion for a new trial, which was denied by the trial court. The trial court found that the defendant waived the issue for failing to file a written request for the instruction and, alternatively, that fraudulent use of a credit card is not a lesser-included offense of identity theft.

On appeal, the defendant admits that he did not make a request for the instruction in writing. However, he asserts that "the record is clear that the request was made[; therefore,] the issue is proper for plain error review."

"Absent a written request, the failure of a trial judge to instruct the jury on any lesser included offense may not be presented as a ground for relief either in a motion for new trial or on appeal." Tenn. Code Ann. § 40-18-110(c). The Tennessee Supreme Court has held that "if a defendant fails to request an instruction on a lesser-included offense in writing at trial, the issue will be waived for purposes of plenary appellate review and cannot be cited as error in a motion for new trial or on appeal." State v. Page, 184 S.W.3d 223, 229 (Tenn. 2006). However, even when a defendant waives a jury instruction for failing to request it in writing, an appellate court may still review the issue for plain error. Id. at 230.

In order for us to find plain error:

(a) the record must clearly establish what occurred in the trial court;

(b) a clear and unequivocal rule of law must have been breached;

(c) a substantial right of the accused must have been adversely affected;

(d) the accused did not waive the issue for tactical reasons; and

(e) consideration of the error is "necessary to do substantial justice."

State v. Smith, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). The presence of all five factors must be established by the record before we will recognize the existence of plain error, and complete consideration of all the factors is not necessary when it is clear from the record that at least

one factor cannot be established.  Id. at 283.

We will review the defendant's assertion that the trial court erred in declining to give an instruction on fraudulent use of a credit card as a lesser-included offense of identity theft for plain error.  Under the test in State v. Burns, 6 S.W.3d 453 (Tenn. 1999), an offense is lesser-included if:

> (a) all of its statutory elements are included within the statutory elements of the offense charged; or
>
> (b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing
>
>> (1) a different mental state indicating a lesser kind of culpability; and/or
>>
>> (2) a less serious harm or risk of harm to the same person, property or public interest; or
>
> (c) it consists of
>
>> (1) facilitation of the offense charged or of an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or
>>
>> (2) an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or
>>
>> (3) solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b).

Id. at 466-67.

Identity theft is defined by our Tennessee Code as follows:

> A person commits the offense of identity theft who knowingly obtains, possesses, buys, or uses, the personal identifying information of another:

(A) With the intent to commit any unlawful act including, but not limited to, obtaining or attempting to obtain credit, goods, services or medical information in the name of such other person; and

(B)(i) Without the consent of such other person; or

(ii) Without the lawful authority to obtain, possess, buy or use that identifying information.

Tenn. Code Ann. § 39-14-150(b)(1)(A), (B).

Fraudulent use of a credit card is defined as follows:

A person commits the crime of fraudulent use of a credit or debit card who uses, or allows to be used, a credit or debit card or information from that card, for the purpose of obtaining property, credit, services or anything else of value with knowledge that:

(1) The card is forged or stolen;

(2) The card has been revoked or cancelled;

(3) The card has expired and the person uses the card with fraudulent intent; or

(4) For any other reason the use of the card is unauthorized by either the issuer or the person to whom the credit or debit card is issued.

Id. § 39-14-118(b).

It is apparent that fraudulent use of a credit card does not constitute facilitation of, attempt to commit, or solicitation of identity theft. Thus, fraudulent use of a credit card is not a lesser-included offense under part (c) of the Burns test. In addition, both statutes require a mental state of knowing and it appears that there is no less serious harm or risk of harm to the same person, property, or public interest proscribed by the fraudulent use of a credit card statute. Therefore, fraudulent use of a credit card is not a lesser-included offense under parts (b)(1) or (b)(2) of the Burns test. The question is, thus, under part (a) of the Burns test, whether all of the statutory elements of fraudulent use of a credit card are included within the statutory elements of identity theft.

-9-

In order to convict a defendant of fraudulent use of a credit card, the State must show that a defendant used or allowed the use of a credit card or debit card. Although the "personal identifying information" element of identity theft may include the use of a credit card or debit card, it is not a requirement. Thus, one can commit the offense of identity theft without necessarily committing the offense of fraudulent use of a credit card. Moreover, one can commit the offense of fraudulent use of a credit card without committing the offense of identity theft. For example, the cardholder could use, with fraudulent intent, his or her cancelled or expired credit card to obtain something of value and thereby commit fraudulent use of a credit card, but that same action would not constitute identity theft. Therefore, fraudulent use of a credit card is not a lesser-included offense under part (a) of the Burns test. See State v. Ronald Bowman, No. W2003-02389-CCA-R3-CD, 2005 WL 94365, at *4-5 (Tenn. Crim. App. Jan. 13, 2005), perm. to appeal denied (Tenn. May 23, 2005) (determining that fraudulent use of a driver's license is not a lesser-included offense of identity theft because one could commit the offense of identity theft without committing the offense of fraudulent use of a driver's license). In light of our determination that fraudulent use of a credit card is not a lesser-included offense of identity theft, the trial court did not breach a clear and unequivocal rule of law in declining to give the jury instruction. Therefore, there is no plain error in this case.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court. We note that the judgment form for the identity theft conviction lists it as a Class C felony. However, in discussions during trial and at sentencing, the court observed that the defendant's actions constituted a Class D felony identity theft and imposed sentence based on such classification. Therefore, we remand for entry of a corrected judgment.

_____
ALAN E. GLENN, JUDGE