# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned On Briefs August 2, 2011

## TROY FULLER v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Madison County**
**No. C-10-154     Donald H. Allen, Judge**

---

**No.  W2010-02582-CCA-R3-PC  - Filed June 12, 2012**

---

Appellant, Troy Fuller, was convicted by a Madison County jury of rape, aggravated criminal trespass, and violation of an order of protection.  The trial court sentenced Appellant to an effective sentence of twelve years.  On appeal, Appellant complains that the evidence was insufficient to support his convictions, the length of his sentence was excessive, that the jury was not instructed on the offense of assault and that his wife's car was illegally searched.  On appeal, we determine that the evidence was sufficient to support his convictions; he has waived any issue regrading his sentence because he failed to include a copy of the presentence report in the record; Appellant has waived any issue regarding an assault instruction because he failed to request one; and his constitutional rights were not violated by the search of the car because the knife, which was recovered from the search, was not presented as evidence at trial.  Therefore, we affirm the judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court are Affirmed.

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, J., joined. JERRY L. SMITH, J., Not Participating.

Troy Fuller, Pro Se, Whiteville, Tennessee.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; Jerry Woodall, District Attorney General; and Brian Gilliam, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## *Factual Background*

Appellant and the victim were involved in a sexual relationship. After almost a year of dating, the victim sought an order of protection. The trial court granted the order of protection, and it went into effect on November 15, 2006. The provisions of the order stated that it would expire after one year. According to the order of protection, Appellant was to have no contact with the victim. The victim testified that she remembered going to court when she requested the order of protection. She recalled that Appellant was at the hearing. However, the victim mistakenly believed that the trial court dismissed the order of protection.

On March 2, 2007, the victim and her friend, Navelle Winningham, were at the victim's house. She and Mr. Winningham had dated off and on over the years. While Mr. Winningham was at the victim's home, Appellant came by the house twice. The first time he came by, the victim was in the process of taking her daughter to school, so she was not home. Appellant returned about thirty minutes later. He and Mr. Winningham had a confrontation. Appellant returned to his car and left. Mr. Winningham stated at the trial that the victim was upset because Appellant was constantly calling her and coming over to her house.

Mr. Winningham left the house, and the victim went to her room to take a nap. The victim was awakened by the sound of someone "creeping" in her house. She went to investigate and walked into the living room. When she got to the living room, she saw Appellant. She immediately asked Appellant why he was in her house and told him to get out. Appellant refused to leave, and Appellant and the victim began to struggle. She repeatedly told him to leave. Appellant yelled at the victim and called her names. As the victim was trying to escape, Appellant picked up a wooden table and shoved the victim into a corner with it. He then pulled out a rusty knife and held it to the victim's neck as he dragged her to her bedroom.

Once in the bedroom, Appellant demanded that the victim remove the boxer shorts she was wearing. He told her that if she did not remove them herself, he would cut them off of her. The victim was afraid that Appellant was going to hurt her, so she complied with his request. Appellant forced the victim onto the bed, got on top of her, and held his arm on her throat to keep her restrained. The victim screamed and cried and pleaded for help. While holding the victim down, Appellant penetrated her vagina with his penis. The victim was unsure whether Appellant ejaculated inside of her.

After Appellant finished, he asked the victim to give him a ride to his car. The victim refused and jumped into her car to pick up her daughter from school. She returned home after picking up her daughter and called the police. The victim spoke with the police and was taken to General Hospital to be examined. While at the hospital, a rape kit was collected from the victim. The officers also collected the victim's clothing.

Officer James Singleton, with the Jackson Police Department, responded to the call at the victim's house on March 2, 2007. When he arrived, the victim told him that her ex-boyfriend had broken into her house and raped her. Officer Singleton took a statement from the victim. He stated that the victim was very upset and crying.

After the statement, Officer Singleton investigated the house. He stated that the inside of the house was in disarray and looked as if there had been a struggle. Officer Singleton also checked the back door. He testified that it appeared that the back door had been forced open. Officer Singleton collected evidence at the scene, including the top and bottom sheets of the bed where the rape took place. He also took pictures of the crime scene and a bruise on the victim's arm.

Officer Singleton left the victim's house to go finish his report on the incident. While he was in the car, he received a call from dispatch stating that the victim had seen Appellant's car on Peabody Street. Officer Singleton proceeded to the address he was given and found Appellant there. He arrested Appellant.

Special Agent Qudriyya Debnam with the Tennessee Bureau of Investigation ("TBI") analyzed the rape kit collected during the victim's examination. Agent Debnam testified that the sperm found during the collection of the rape kit matched Appellant's DNA profile.

Appellant also testified at trial. He denied that he had broken into the victim's house. He did admit to the fact that he had been at the victim's house twice on the morning of the incident. According to Appellant, he waited for Mr. Winningham to leave, and he returned to the victim's house. He said he came in through the back door to the house. Appellant testified that he had left the back door open the previous day when he had been over at the victim's house. Appellant stated that he wanted to continue an argument that he and the victim were having the previous day. He said they were arguing about the victim dating other people. Appellant admitted that at the time of the argument, he and the victim were no longer dating.

Appellant stated that he and the victim were arguing in the living room. He admitted that he used a table to trap the victim in the corner, but the victim was able to push the table away and get out of the corner. Appellant denied that he had a knife.

-3-

Appellant also denied that he raped the victim. According to him, he "acted nice" to the victim and gave her money. In this way, Appellant stated, he "tricked" her into having sexual intercourse with him. Appellant stated that he became angry while they were having sexual intercourse and he told her that he was going to take everything back that he had given her.

Appellant agreed that the trial judge had signed the order of protection and put it into effect on November 15, 2006. He stated that he believed that the order had been dismissed because the victim failed to appear at the hearing.

Appellant was charged with one count of aggravated rape, one count of aggravated burglary, and one count of violation of an order of protection. Following a jury trial, Appellant was convicted of rape, aggravated criminal trespass, and violation of an order of protection. On October 14, 2008, the trial court held a sentencing hearing and sentenced Appellant to twelve years at 100% for the rape, and eleven months and twenty-nine days each for his convictions of aggravated criminal trespass and violation of an order of protection. The trial court ordered that all the sentences were to be served concurrently resulting in an effective sentence of twelve years.

Appellant filed a motion for new trial and an amended motion for new trial. The trial court denied the motion and amended motion at a hearing held on January 25, 2010. Trial counsel filed a motion to withdraw on February 24, 2010. The trial court held a hearing on May 4, 2010, on trial counsel's motion to withdraw. Trial counsel stated that one reason he wanted to withdraw is that Appellant had filed a complaint against him with the Board of Professional Responsibility. During the hearing, trial counsel informed the trial court that he had attempted to file a notice of appeal. However, this Court required a payment before the appeal could be filed. Appellant was unable to pay. The trial court granted trial counsel's motion to withdraw.

On May 19, 2010, Appellant filed a pro se petition for post-conviction relief in which he asked for a delayed appeal. On November 16, 2010, the trial court filed an order granting Appellant's request for a delayed appeal. In addition, the trial court ordered that Appellant be allowed to proceed pro se. Appellant subsequently filed a notice of appeal.

## ANALYSIS

At the outset of our analysis, we note that Appellant has proceeded pro se on appeal. The issues presented in his brief are somewhat confusing and inartfully drawn. With this in mind, we have attempted to address his complaints on appeal.

**Sufficiency of the Evidence**

Appellant argues that the evidence was insufficient to support his convictions of violation of an order of protection and rape. The State argues that the evidence was sufficient.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Id.* The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Harris*, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

Violation of Order of Protection

Appellant argues that the evidence was insufficient to support his conviction because he argues that there was not a hearing as required under Tennessee Code Annotated section 39-13-113(f). During the trial, the victim testified that she and Appellant were present at a hearing on the order of protection. Appellant testified that the victim failed to appear at the hearing and, therefore, he believed that the order of protection had been dismissed.

Appellant testified at trial and presented his version of events to the jury. The jury clearly found the victim to be a more credible witness in this case. As stated above, this Court is not allowed to substitute its judgment for that of the trier of fact when determining credibility. In addition, there is stamped copy from the General Sessions Court of the order of protection stating that it went into effect on November 15, 2006, and would remain effective until November 15, 2007.

Tennessee Code Annotated section 39-13-113(f) contains provisions setting out a violation of an order of protection. The statute states the following:

(f) In order to constitute a violation of this section:

(1) The person must have received notice of the request for an order of protection or restraining order;

(2) The person must have had an opportunity to appear and be heard in connection with the order of protection or restraining order; and

(3) The court made specific findings of fact in the order of protection or restraining order that the person committed domestic abuse, sexual assault or stalking as defined in § 36-3-601.

When the evidence presented at trial is taken in the light most favorable to the State, we conclude that Appellant received notice of the order of protection, there was a hearing in connection with the order and Appellant attended the hearing, and the order, which was included in the record, states that Appellant committed the acts set out in the statute.

Therefore, we conclude that the evidence is sufficient to support the conviction of violation of an order of protection.

### Rape

Appellant also argues that the evidence was insufficient to support his conviction for rape. Appellant puts forth several arguments supporting his assertion. The State argues that the evidence was more than sufficient.

Appellant argues that the only reason the victim accused him of rape is because he took back the money he gave her before they had intercourse. This is an issue of fact. As stated above, the jury as trier of fact determines the credibility of the witnesses and the weight and value to be given the evidence presented. The jury in this case found the victim to be the more credible witness. Appellant has not shown that this is a reason to reverse his conviction.

Appellant also bases his argument on attacks against the report and testimony of Agent Debnam. He argues that Agent Debnam's testimony was not reliable because there are two dates listed on the serology report for the submission of the items to be tested. He also includes an argument about Agent Debnam's testimony regarding the use of the terms vaginal wiping as opposed to vaginal swab and the use of a piece of gauze as opposed to a Q-tip.

We have reviewed Agent Debnam's testimony and find that her testimony was straightforward. She stated that she received the items to be tested on the second date listed. This is what is reflected in the serology report. She stated that she tested the gauze included as part of the vaginal wiping. After testing the vaginal wiping and the samples from Appellant and Mr. Winningham, Agent Debnam concluded that DNA in the vaginal wiping matched Appellant, and "The probability of an unrelated individual having the same DNA profile from either the African-American, Caucasian, Southeastern Hispanic, or Southwestern Hispanic populations exceeds the current world population."

Appellants assertions of unreliability are unfounded. Therefore, this issue is without merit.

Appellant also argues that the State did not adequately prove that he used a knife in the perpetration of the rape. This issue is not relevant to the issue of whether the evidence was sufficient to convict Appellant of rape because rape does not require the use of a weapon. *See* T.C.A. § 39-13-503.

Rape is defined as the, " unlawful sexual penetration of a victim by the defendant or of the defendant by a victim accompanied by . . . [f]orce or coercion is used to accomplish the act . . . ." When taken in the light most favorable to the State, the evidence presented at trial showed that Appellant chased the victim around the living room, cornered her behind a table, dragged her into the bedroom, and held her down on the bed while he penetrated her vagina. The victim did not consent to sexual intercourse. The evidence is more than sufficient to support a conviction of rape.

For these reasons, this issue is without merit.

## Lesser Included Offense

Appellant also argues that his right to trial by jury was violated because the trial court did not instruct the jury on the offense of assault as a lesser included offense. Tennessee Code Annotated section 40-18-110 requires the defendant to request lesser included offense instructions in writing at trial in order to subsequently appeal a trial court's failure to instruct on such offenses. Tennessee Code Annotated section 40-18-110 states, in pertinent part:

> (b) In the absence of a written request from a party specifically identifying the particular lesser included offense or offenses on which a jury instruction is sought, the trial judge may charge the jury on any lesser included offense or offenses, but no party shall be entitled to any such charge.

> (c) Notwithstanding any other provision of law to the contrary, when the defendant fails to request the instruction of a lesser included offense as required by this section, such instruction is waived. Absent a written request, the failure of a trial judge to instruct the jury on any lesser included offense may not be presented as a ground for relief either in a motion for new trial or on appeal.

In *State v. Page*, 184 S.W.3d 223 (Tenn. 2006), the Tennessee Supreme Court determined that Tennessee Code Annotated section 40-18-110 was constitutional, concluding that "if a defendant fails to request an instruction on a lesser-included offense in writing at trial, the issue will be waived for purposes of plenary appellate review and cannot be cited as error in a motion for a new trial or on appeal." *Page*, 184 S.W.3d at 229. However, the court went on to note that appellate courts were not precluded from reviewing the issue sua sponte under the plain error doctrine. *See id.* at 230.

The record on appeal fails to show that trial counsel requested in writing the instruction of assault as a lesser included offense. Additionally, we are unable to determine if Appellant failed to raise this issue in a motion for new trial because that motion has not been included in the record.

We now address whether it was plain error[1] for the trial court to fail to give a lesser included offense instruction on assault, even though Appellant has not properly preserved the issue for appeal. When determining whether plain error review is appropriate, the following five factors must be established:

"(a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused [must not have waived] the issue for tactical reasons; and (e) consideration of the error [must be] "necessary to do substantial justice."

*State v. Terry*, 118 S.W.3d 355, 360 (Tenn. 2003) (quoting *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994) (footnotes omitted)). Herein, because Appellant has failed to provide an adequate record for review, it is not clear what happened in the trial court. Consequently, Appellant is not entitled to plain error review.

### Search and Seizure

Appellant argues that his constitutional rights were violated by the illegal search of his wife's car. He asserts that the officers seized a knife from his wife's car during the search.

The knife which Appellant asserts was found during the search of the car was not presented as physical evidence to the jury. Appellant admits this fact in his brief. Appellant states, "The confiscated evidence in appellant [sic] case was not presented as evidence at trial." Furthermore, the record on appeal does not include any evidence of the search or its proceeds presented to the trial court. Because the complained of evidence was not presented at trial as evidence, we fail to see how Appellant's constitutional rights have been violated even if the search was determined to be illegal.

Appellant also argues that the victim's reference to the knife used during the rape is the same knife confiscated by the police during the allegedly illegal search. As stated above, the State did not present the knife as a physical object. The victim's testimony and her statements to the police were the only evidence presented to the jury regarding the existence

---

[1] Effective July 1, 2009, Tennessee Rule of Criminal Procedure 52 was deleted in its entirety, and the plain error language was added to Rule 36(b).

of a knife. Therefore, whether Appellant used a knife in the commission of the rape is a factual question for the jury.

For these reasons, this issue is without merit.

### Sentencing

At the sentencing hearing, the State admitted that it had failed to timely file the notice of intent to seek enhanced punishment in order to have Appellant sentenced as a Range II, multiple offender. The State said that it had informed Appellant that it intended to seek a sentence to the maximum of Range I. Subsequently, the trial court sentenced Appellant to the maximum sentence of twelve years under Range I.

Appellant argues that his sentence is excessive based upon his assertion that the presentence report was inaccurate. The State argues that the issue is waived because Appellant failed to include the presentence report in the record on appeal. We have reviewed the record on appeal, and a copy of the presentence report has not been included.

Appellant is responsible for ensuring that a complete and adequate record is prepared and transmitted on appeal. *See, e.g.*, *State v. Taylor*, 992 S.W.2d 941, 944 (Tenn. 1999). If an incomplete record is presented to this Court, the Appellant risks waiving issues raised on appeal. *See, e.g.*, *State v. Roger Stephen Riner*, No. M2009-00579-CCA-R3-CD, 2010 WL 3719168, at *4-5 (Tenn. Crim. App., Sept.23, 2010), *perm. app. denied*, (Tenn. Feb. 17, 2011); *State v. Cindy L. Holder*, No. E2000-01191-CCA-R3-CD, 2003 WL 367244 (Tenn. Crim. App., at Jackson, Feb. 21, 2003).

The alleged errors about which the Appellant complains would necessarily require this Court to review the presentence report to determine if his record supports the imposition of the sentence in question. However, Appellant has not presented those items in the appellate record. He has therefore waived consideration of the issues he has presented on appeal.

Furthermore, Appellant did not object to the introduction of the presentence report at the sentencing hearing. Appellant argues that he urged trial counsel to do so, but trial counsel refused. If this is true, this issue would be properly presented as a claim for ineffective assistance of counsel on post-conviction. We are unable to determine whether the presentence report was inaccurate based upon the evidence before us.

Therefore, this issue is without merit.

### CONCLUSION

For the foregoing reasons, we affirm the judgments of the trial court.


_____

ROBERT W. WEDEMEYER, JUDGE